**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jameel Hsen,<br><br>  Plaintiff,<br><br>vs.<br><br>Jo Anne B. Barnhart, Commissioner of Social Security Administration,<br><br>  Defendant. | No. CIV-04-3034-PHX-MHM<br><br>**ORDER** |

Plaintiff Jameel Hsen seeks judicial review of the Administrative Law Judge's ("ALJ") decision denying his claim for disability insurance benefits.  42 U.S.C. § 405(g).

**I.   Procedural History**

On July 16, 2001, Plaintiff Jameel Hsen ("Plaintiff") filed his application for disability insurance benefits under Title II of the Social Security Act ("the Act") and supplemental security income under Title XVI of the Act claiming disability as of July 1, 2001. Plaintiff's application was initially denied without a hearing on October 15, 2001 (Transcript of Administrative Record "Tr." 35-38) and denied on reconsideration on December 14, 2001. (Tr. 41-44).  On May 21, 2002, Plaintiff filed his request for a hearing in front of an ALJ. The hearing was held on November 13, 2002 and on June 13, 2003 the ALJ issued his decision denying Plaintiff's claims, finding that he was not "disabled" within the meaning of the Act. (Tr. 29-30). On September 20, 2004, the Appeals Council denied Plaintiff's Request

for Review. (Tr. 10-12). On December 20, 2004, Plaintiff initiated the present action in this Court. (Dkt. #1).

## II.     Background Facts

### A.     Plaintiff's Medical History

Plaintiff is a 50-year old male who has a ninth grade education in Israel. His past relevant work experience was as a truck driver. (Tr. 227). In October 1997, while working as a truck driver, Plaintiff fell off the ladder of his truck. (Tr. 113, 152). Plaintiff filed a worker's compensation claim and after an evaluation by Midwest Occupational Health Associates it was concluded that Plaintiff had "chronic pain syndrom with no objective findings; significant symptom magnification is present." (Tr. 154). It was recommended that he return to work. (Tr. 137).

On November 4, 2000, Plaintiff had x-rays taken at St. Luke's Medical Center which revealed multi-level degenerative changes and mild formation of osteophytes. (Tr. 128-129). The x-rays also revealed there were "mild degenerative changes in the elbow." (Tr. 130). It was also determined that Plaintiff's cervical vertebrae were in anatomic alignment; however there was moderate to severe intervertebral disc narrowing at the C4-5 and C6-7 levels. (Tr. 129).

Plaintiff's treating physician, Gregory S. Johnston, M.D., treated Plaintiff from November 2000 through January 2001. (Tr. 100). On December 12, 2000, Dr. Johnston opined that physical therapy was appropriate and that Plaintiff could return to "full duty status on Monday." (Tr. 107). Plaintiff was referred to Atul Patel, M.D. by Dr. Johnston in late December 2000. (Tr. 113). Dr. Patel concluded, based upon his analysis, that Plaintiff's symptoms were indicative of mild cervical nerve root irritation most likely at the C5-6 and C6-7 levels. (Tr. 114). There was also no evidence of any "definitive denervation in the upper extremity myotmes" and "mild median sensory neuropathy on the basis of entrapment at the wrist level." (Tr. 114).

On September 19, 2001, Plaintiff underwent a consultative medical evaluation by Malcolm McPhee, M.D. (Tr. 169). Dr. McPhee noted that an examination of Plaintiff's neck

1  revealed "restricted extension to approximately 10 degrees before having discomfort in the
2  lower neck posteriorly" as well as moderate restricted motion in his right hip. (Tr. 170.). Dr.
3  McPhee diagnosed the existence of degenerative disc disease; degenerative disc disease of
4  the lumbar spine; mild right elbow osteoarthritis; and reduced range of motion at the right
5  hip. (Id.). He also concluded that based upon Plaintiff's history, the claimant would be able
6  to lift 50 pounds occasionally and 25 pounds frequently as well as be able to stand or walk
7  at least two hours of an eight hour workday, limited by his hip and back pain. (Id.).

8        Plaintiff was examined by Mohammed Ibrahim, M.D. on February 13, 2002 (Tr. 197-
9  98). On June 8, 2002, Dr. Ibrahim diagnosed Plaintiff with degenerative joint disease and
10 pain but was of the opinion that Plaintiff would be able to resume his customary work on
11 December 31, 2002. (Tr. 203). On August 21, 2002, Dr. Ibrahim completed a Physical
12 Capacities Evaluation and concluded that Plaintiff was able to sit for a total of three hours
13 during an eight hour workday, stand or walk for one hour in an eight hour workday, lift and
14 carry no more than twenty pounds, perform single grasping repetitively with both hands, but
15 could not push or pull arm controls, leg controls, and perform fine manipulation with both
16 hands on a repetitive basis. (Tr. 200-01). Dr. Ibrahim rated Plaintiff's impairments as
17 moderately severe. (Id.). In a letter dated November 5, 2002, Dr. Ibrahim identified himself
18 as Plaintiff's treating physician for degenerative cervical and lumbar disk disease. (Tr. 189).
19 Dr. Ibrahim related that Plaintiff "has severe neck and low back pain" and that Plaintiff's
20 neck pain radiates down his arms and his leg pain radiates down his thighs. (Id.). Dr.
21 Ibrahim also related that Plaintiff has "tingling and numbness of the fingers." (Id.). Dr.
22 Ibrahim concluded that Plaintiff is "totally and permanently disabled for gainful
23 employment." (Tr. 189). Again, on January 7, 2003 Dr. Ibrahim authored another letter
24 stating that Plaintiff was "totally and permanently disabled" as well as stated that Plaintiff
25 had positive leg raising tests and back pain at thirty degrees bilaterally. (Tr. 204).

26     **B.**    **Hearing Testimony**

27       At the hearing on November 13, 2002, Plaintiff offered his testimony. He testified
28 that although he uses a cane, he does not need one to walk. (Tr. 255). He testified that he

1  lays down for four to six hours a day due to neck pain and does not work around the house
2  because of it. (Tr. 245-247). Additionally, he can walk for 15-30 minutes at a time before
3  experiencing pain, stand for 15 minutes, and be on his feet for two hours per day as well sit
4  for approximately four hours per day. (Id.).

5  At the hearing on November 13, 2002, the ALJ also called upon Dr. Samuel Nafoosi
6  to render an expert opinion regarding his findings after reviewing Plaintiff's medical records.
7  (Tr. 26, 230). Dr. Nafoosi opined that Plaintiff did not have an impairment or combination
8  of impairments that met or equaled an impairment listed in section 1.04A, 20 C.F.R. Part
9  404(Tr. 235-43). Dr. Nafoosi indicated the medical records documented no motor loss,
10 sensory loss, muscle weakness, atrophy or reflex loss. (Tr. 235-36). Additionally, he
11 concluded that there was no evidence of straight leg raising test results. (Tr. 236). Lastly,
12 he concluded that Plaintiff retained a functional capacity to lift or carry ten pounds frequently
13 and twenty pounds occasionally; sit for eight hours in an eight hour workday; stand or walk
14 for six hours in an eight hour workday, provided he is allowed to change positions each hour;
15 bend, stoop, and kneel on an occasional basis; and occasionally use his right upper extremity
16 above shoulder height. (Tr. 234).

17 Lastly, the ALJ had Stephen Berry, a vocational expert, testify at the hearing. The
18 ALJ posed several hypotheticals to Mr. Berry. First, the ALJ requested Mr. Berry to assume
19 the testimony and limitations set forth by Dr. Nafoosi were accurate. (Tr. 255). Based upon
20 this original hypothetical, Mr. Berry opined that there would be jobs, other than Plaintiff's
21 past work, that he could perform such as unskilled inspector jobs, of which approximately
22 5,000 exist regionally and 60,000 nationally and light assembly work of which there are
23 approximately 30,000 regionally and 350,000 jobs nationally. (Tr. 256). Mr. Berry stated
24 that this opinion was not diminished by the fact that English is a second language to Plaintiff.
25 (Tr. 257). Second, the ALJ modified the hypothetical so that sitting would be reduced to
26 four hours per day; standing or walking would be reduced to two hours of an eight hour day;
27 and the claimant would need to rest two to four hours of an eight hour day on an unscheduled
28 basis. (Tr. 258). Mr. Berry opined that such modifications would erode the job base

1 completely. (Id.). Further, when the extra factor of more than moderate pain was included 2 in the original hypothetical posed to Dr. Nafoosi, Mr. Berry concluded that it would 3 "virtually completely preclude any work." (Tr. 260). Lastly, when adding the marked 4 limitation in the use of his right upper extremity to the original hypothetical, Mr. Berry 5 opined that it would essentially eliminate all unskilled jobs. (Tr. 262-63).

### C. The ALJ's Conclusion

In his decision issued on June 13, 2003, the ALJ found that the Plaintiff has an impairment or a combination of impairments considered "severe" based upon the requirements of 20 CFR §§ 404.1520(b) and 416.920(b); however these impairments did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (Tr. 29). The ALJ further found Plaintiff's allegations regarding his limitations not credible and concluded that after reviewing the records, Plaintiff has the residual functional capacity to lift and/or carry ten pounds frequently and 20 pounds occasionally, can stand and/or walk for six hours in an eight-hour day and sit eight hours in an eight-hour day with hourly changes in position as well as occasionally bend, stoop, kneel, and use his right upper extremity for shoulder above shoulder level. (Id.). The ALJ concluded that Plaintiff has no transferrable skills from any past relevant work but has the residual functional capacity to perform a significant amount of light work and that there are a significant amount of jobs that he could perform. (Tr. 30). Lastly, the ALJ concluded that the Plaintiff is not under a "disability" as defined in the Social Security Act. (Tr. 29-30).

In reaching this decision, the ALJ discounted the opinion of Dr. Ibrahim stating that his treatment records were practically illegible but appeared only to list complaints, diagnoses, and the medications prescribed. (Tr. 26). The ALJ also concluded that Dr. Ibrahim's "exaggerated" reports establish him as an advocate on behalf of the Plaintiff and not an objective reporter and thus his reports are without probative value. (Id.).

### III. Standard of Review

This Court must affirm the ALJ's findings if they are supported by substantial evidence and free from reversible legal error. Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir.

1990). Substantial evidence means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); Clem v. Sullivan, 894 F.2d 328, 330 (9th Cir. 1990).

In determining whether substantial evidence supports a decision, the Court considers the record as a whole. Richardson, 402 U.S. at 401; Tylitzki v. Shalala, 999 F.2d 1411, 1413 (9th Cir. 1993). If there is sufficient evidence to support the ALJ's determination, the Court cannot substitute its own determination. Young v. Sullivan, 911 F.2d 180, 184 (9th Cir. 1990). Where evidence is inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the [Commissioner]." Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). Therefore, if on the whole record before the Court, substantial evidence supports the Commissioner's decisions, this Court must affirm. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989); 42 U.S.C. § 405(g).

An ALJ determines an applicant's eligibility for disability benefits through the following five stages:

> (1) determine whether the applicant is engaged in "substantial gainful activity;"
>
> (2) determine whether the applicant has a "medically severe impairment or combination of impairments;"
>
> (3) determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;
>
> (4) if the applicant's impairment does not equal one of the "listed impairments," determine whether the applicant is capable of performing his or her past relevant work;
>
> (5) if the applicant is not capable of performing his or her past relevant work, determine whether the applicant "is able to perform other work in the national economy in view of his [or her] age, education, and work experience."

Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987) (citing 20 C.F.R. §§ 404.1520(b)-(f)). See 20 C.F.R. § 416.920. At the fifth stage, the burden of proof shifts to the Commissioner. Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993).

**IV.    Discussion**

1    Plaintiff asserts that the ALJ erred in three areas in reaching his decision.
2 Specifically, Plaintiff asserts that: (1) the ALJ should have found that Plaintiff's cervical
3 spinal disorder meets or equals Listed Impairment 1.04A, 20 CFR Part 404, and thus
4 establishes Plaintiff's "disability" without need of any further inquiry; (2) the ALJ erred in
5 rejecting the opinion of Plaintiff's treating physician, Dr. Ibrahim; and (3) the ALJ committed
6 reversible error in analyzing the Plaintiff's credibility.

7    **A    Listed Impairment 1.04A**

8    "A claimant is disabled if she proves: (1) that she is not presently engaged in
9 substantial activity; (2) that her disability is severe; and (3) that her impairment meets or
10 equals one of the specific impairments described in the regulations." Thomas v. Barnhart,
11 278 F.3d 947, 955 (9th Cir. 2002) (citing Tackett v. Apfel, 180 F.3d 1094, 1098 (9th cir.
12 1999)). If the impairment "meets or equals" one of the specific listed impairments described
13 in the regulations then the claimant is disabled and entitled to disability insurance benefits;
14 however, if the claimant's impairment neither meets or equals one of the listed impairments
15 then the claimant's case cannot be resolved on this basis and the inquiry must proceed to the
16 subsequent steps of the evaluation, *i.e.*, steps four and five. Tackett, 180 F.3d at 1098. "For
17 a claimant to show that his impairment matches a listing, it must meet all of the specified
18 medical criteria. An impairment that manifests only some of those criteria, no matter how
19 severely, does not qualify." Monchada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995).

20    Appendix 1 to Subpart P of the Regulations No. 4, 20 C.F.R. Part 404, provides the
21 listing of impairments of each of the major body systems "which are considered severe
22 enough to prevent a person from doing any gainful activity." Plaintiff contends that the
23 impairment of 1.04, "Disorder of the Spine" is established in the record per se, thus
24 establishing Plaintiff's disability without need of any further inquiry. The elements of
25 disability based upon "Disorder of the Spine" relied upon by Plaintiff are as follows: (1)
26 osteoarthritis or degenerative disc disease resulting in compromise of a nerve root or spinal
27 cord with (2) evidence of nerve root compression characterized by neuro-anatomic
28 distribution of pain; (3) limitation of motion of the spine; (4) motor loss (atrophy with

1    associated muscle weakness or muscle weakness); (5) accompanied by sensory or reflex loss
2    and (6) if there is involvement of the lower back, positive straight-leg raising test (sitting and
3    supine).  Plaintiff argues that there is evidence in the record establishing all of these elements
4    and the ALJ erred by concluding that Plaintiff's impairments did not meet or equal the listed
5    impairment of "Disorder of the Spine."  Plaintiff cites the medical expert testimony of Dr.
6    Nafoosi and the overall medical record for support of this argument.

7    However, in reviewing Dr. Nafoosi's testimony and the record upon which he relied,
8    it is clear that not all of these elements were satisfied.  First, and most importantly, Dr.
9    Nafoosi related that there is no evidence of "muscle weakness or muscle atrophy." (Tr. 236).
10   While, he did subsequently agree that the physical therapist's note to increase grip strength
11   suggested some weakness, at no time did he rescind his conclusion regarding the requisite
12   element of "motor loss."  (Tr. 241-42).   This Court cannot say it was "clear error" for the
13   ALJ to rely on this conclusion.  See Tackett, 180 F.3d at 1099-1100 (9th Cir. 1999) (stating
14   that ALJ did not err in relying upon expert's opinion based upon review of the medical
15   records that plaintiff did not meet or equal a listed impairment).

16   Plaintiff also deems it irrelevant that at the time of the hearing no straight-leg raising
17   test had been performed.  Plaintiff argues that because he suffers from degenerative disc
18   disease of the cervical spine no such test is necessary as the test is only required for issues
19   with the lower back.  Assuming this is true, Plaintiff still fails the requirement of "muscle
20   weakness or muscle atrophy." (Tr. 236). Further, Plaintiff also claims disability based upon
21   degenerative disc disease of the lumbar spine, thus evidence of a straight-leg raising test is
22   required because this alleged impairment involves the lower back.  It is relevant to note that
23   subsequent to the hearing, Plaintiff's treating physician, Dr. Ibrahim did author a letter
24   stating a positive test was performed.  (Tr. 204).  However, Dr. Ibrahim gave no indication
25   as to whether the test was performed both sitting and supine, which is required.

26   Lastly, Dr. Nafoosi unequivocally stated that there was no evidence of "sensory loss"
27   (Tr. 235).  Plaintiff argues that this is not significant because no opinion was expressed
28   regarding the alternative symptom of "reflex loss."  Even though Plaintiff did not make this

- 8 -

1  argument at the hearing he contends that the record demonstrates Plaintiff possessed "reflex
2  loss." (Tr. 113).  However, Plaintiff's reflex loss, based upon the record, appears to be
3  inconsistent at best. For instance, in February 1998, there was no evidence of reflex loss in
4  Plaintiff's biceps, triceps and ankles(Tr. 144, 146). Thus, Plaintiff's argument that reflex loss
5  is clearly established through the record is misplaced. See Williams v. Shalala, 997 F.2d
6  1494, 1499 (D.C. Cir. 1993) (holding that ALJ did not err in failing to defer to treating
7  physician's diagnoses that plaintiff possessed listed impairment where opinion was based
8  upon contradictory evidence in the record).  Moreover, even if reflex loss did exist, the
9  absence of any evidence of "muscle weakness or muscle atrophy" makes this point moot.

10  Thus, in reviewing the ruling of the ALJ, this Court cannot say the ALJ committed
11  reversible error in finding that Plaintiff did not possess a listed impairment based upon
12  Plaintiff's failure to match all the required criteria. See Monchada v. Chater, 60 F.3d 521,
13  523 (9th Cir. 1995) (affirming ALJ decision that claimant did not have a listed impairment
14  where finding was supported by substantial evidence).

15  **B.    ALJ's Determination To Reject The Opinion Of Dr. Ibrahim.**

16  "Although a treating physician's opinion is generally afforded the greatest weight in
17  disability cases, it is not binding on an ALJ with respect to the existence of an impairment
18  or the ultimate determination of disability." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th
19  Cir.2001). "The ALJ may disregard the treating physician's opinion whether or not that
20  opinion is contradicted." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.1989).   When
21  presented with conflicting medical opinions, the ALJ must determine credibility and resolve
22  the conflict. Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir.1992). Greater weight must
23  be given to the opinion of treating physicians, and in the case of a conflict "the ALJ must
24  give specific, legitimate reasons for disregarding the opinion of the treating physician." Id.
25  Bergfeld v. Barnhart, 361 F. Supp.2d 1102, 1111 (D. Ariz. 2005).  The ALJ can meet this
26  burden by setting out a detailed and thorough summary of the facts and conflicting clinical
27  evidence, stating his interpretation thereof, and making findings. Thomas, 278 F.3d at 957
28  (quoting Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.1989)). Thus, the question before

- 9 -

the Court is whether the ALJ properly considered and disregarded Plaintiff's treating physician's opinion that Plaintiff was disabled.

The ALJ's ruling sets forth the reasons for rejecting Dr. Ibrahim's opinion that Plaintiff was "totally and permanently disabled." (Tr. 204). Specifically, the ALJ provided that he deemed Dr. Ibrahim's "various exaggerated reports establish him as an advocate on behalf of the claimant and not an objective reporter. As such his reports are without probative value..." (Tr. 26). Additionally, the ALJ stated that Dr. Ibrahim "repeatedly stated his opinion that the claimant is "totally and permanently disabled."" However, he noted because the determination of disability under the Social Security Act is a matter for the "Commissioner of Social Security and his designees" Dr. Ibrahim's opinions were not binding. (Id.).

Notwithstanding that the ALJ is partially correct that the final determination of "disability" is the ALJ's; the Court finds that the ALJ did not advance specific and legitimate reasons for disregarding the opinion of Dr. Ibrahim. Bergfeld, 361 F. SUPP.2d at 1111 (D. Ariz. 2005). First, as Plaintiff notes, the ALJ has a duty to develop the record and assist a claimant with development of his claim. Tonepetyan v. Hatler, 242 F.3d 1144, 1150 (9th Cir. 2001). Here, the ALJ noted without any indication of attempts to follow up, that the treatment records from Dr. Ibrahim "were practically illegible but appeared only to list complaints, diagnoses, and the medications prescribed." (Tr.26). The ALJ also stated that it was unclear from the record if Dr. Ibrahim administered the straight leg raising test sitting and supine. (Tr. 26). There is no indication that the ALJ made any attempt to further address these issues in order to fully develop the record. The ALJ could have easily discharged this duty by either subpoenaing Dr. Ibrahim or submitting him specific questions. Tonepetyan, 242 F.3d at 1150.

Second, the ALJ did not adequately state his basis for rejection, other than stating in a conclusory fashion that Dr. Ibrahim had submitted "exaggerated" reports and had become an "advocate." (Tr. 26). At no point in the decision did he expand on this position. See Thomas 278 F.3d at 957 (stating that ALJ can meet burden when rejecting opinion of treating

- 10 -

physician "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."). Additionally, while the determination of "disability" does fall within the purview of the ALJ's duties, the ALJ appears to fail to recognize that Dr. Ibrahim's opinions, as a treating physician, are afforded deferential value absent specific and legitimate reasons for disregarding it. The ALJ's record is devoid of any such reasons. See Tonapetyan, 242 F.3d at 1149 (noting that treating physician's opinion is typically afforded great weight). The ALJ's conclusory statements that Dr. Ibrahim was acting as an advocate of Plaintiff without any specific explanation does not suffice.

Lastly, Plaintiff is correct that the ad hoc basis for rejection of Dr. Ibrahim's opinion provided in Defendant's Response and Cross-Motion for summary judgment is not proper. Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (stating it is improper to consider evidence that the ALJ did not discuss). Here, Defendant offers numerous bases from the record supporting the ALJ's decision to reject Dr. Ibrahim's opinion. However, those bases, assuming valid, should not come in on an ad hoc basis but should have been set out by the ALJ in reaching his decision if in fact he relied upon them. Thus, the ALJ failed to provide the requisite specific and legitimate reasons for rejecting Dr. Ibrahim's opinion that Plaintiff was "totally and permanently disabled."

**C.     The ALJ's Determination That Plaintiff's Testimony Was Not Credible**

Where evidence is inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the [Commissioner]." Sample, 694 F.2d at 642. "[O]nce the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain. Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (citing Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir.1986)). Further, although an adjudicator may find the claimant's allegations of severity to be not credible, the adjudicator must specifically make findings which support this conclusion. Id. These findings must be sufficiently specific to allow a reviewing court to

1  conclude the adjudicator rejected the claimant's testimony on permissible grounds and did
2  not "arbitrarily discredit a claimant's testimony regarding pain." Id. (citation omitted).

3  Here, there is substantial evidence of an underlying impairment. For instance, there
4  have been several diagnoses that Plaintiff suffers from degenerative disk disease as well as
5  osteophytes. (Tr.128-29,170,203). Based upon these findings, the ALJ classified Plaintiff's
6  impairments as "severe" based upon 20 CFR §§ 404.1520(b) and 416.920(b). However, in
7  rejecting Plaintiff's testimony regarding the severity of his impairments the ALJ relied upon
8  factors that are not related to Plaintiff's allegation of pain or supported by the record. First,
9  the ALJ noted that Plaintiff had received a substantial inheritance and thus questioned his to
10 drive to work. (Tr.27). This factor is not relevant to the issue at hand of whether Plaintiff
11 is "disabled" within the meaning of the Social Security Act and is wholly speculative.
12 Second, the ALJ broadly noted that Plaintiff's symptoms are not supported by the objective
13 medical evidence. (Tr. 27). While, a valid reason to deem Plaintiff's testimony not credible,
14 the ALJ provides no explanation of this finding other than Plaintiff carried a cane that was
15 not prescribed by a physician (Id.). However, for whatever purpose the cane was used, this
16 factor alone does not suggest his symptoms are not supported by the objective medical
17 evidence.[1]  Lastly, the ALJ cites the fact that Plaintiff asserted an inability to speak English
18 but was observed several times during the hearing speaking English. (Id.). However, a
19 review of the record reveals that Plaintiff has never asserted that he is not able to speak or
20 write English, only that he does these things on a limited basis and prefers to use his first
21 language of Arabic. (Tr. 69, 244). Thus, citing this as a relevant factor suggesting Plaintiff
22 is not credible is misplaced. Therefore, a review of the factors relied upon by the ALJ in
23 determining Plaintiff's credibility regarding the severity of his impairments demonstrates that
24 the ALJ did not invoke specific permissible grounds in rejecting Plaintiff's credibility.
25 Bunnell, 947 F.2d 341, 345.

---

[1] Plaintiff argues that the record is clear that the cane was not prescribed but is used by Plaintiff to rest his head when seated. (Tr. 169).

- 12 -

### D.     Future Handling

In Connett v. Barnhard, 340 F. 3d 871, 876 (9th Cir. 2003), the Ninth Circuit set forth that an award of benefits is discretionary where the reasons for the ALJ's denial are legally insufficient. If the court determines that there are specific findings still to be made than a remand is appropriate. Id. The general rule appears to be that except in rare circumstances, the court should remand to the agency for additional explanation and investigation. Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004) (citing INS v. Ventura, 537 U.S. 12, 16, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002). The rare circumstances that would justify a remand with an entry of an award would be: (1) the ALJ failed to provide legally sufficient reasons for rejecting claimant's testimony, (2) there were no outstanding issues to be resolved before determination of disability could be made, and (3) it was clear from the record that ALJ was required to find claimant disabled if his pain testimony was credited. Moisa, 367 F.3d at 886. Where this narrow test is met, the relevant testimony will be established to be true and a remand for benefits is proper. Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).

In the instant case, upon review of the record, it is apparent to the Court that the ALJ improperly rejected the opinion of Plaintiff's treating physician, Dr. Ibrahim, that Plaintiff was "totally and permanently disabled." In such circumstances, the treating physician's opinion will be credited as true. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995) (stating "[w]here the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, we credit that opinion "as a matter of law.""). Moreover, the ALJ failed to give an adequate explanation regarding his decision to discredit the Plaintiff's testimony regarding the severity of his impairments. Again, in such circumstances, the testimony will be credited as a matter of law. Id. Therefore, in accepting this evidence as true, it is apparent to the Court that there would be no further issue for the ALJ to consider if this matter were remanded, other than to make an award of benefits for Plaintiff. Therefore, this is one of the limited circumstances in which a remand for further investigation is not appropriate.

**Accordingly,**

**IT IS HEREBY ORDERED** Plaintiff's Motion for summary judgment is granted. (Dkt#8).

**IT IS FURTHER ORDERED** Defendant's Motion for summary judgment is denied (Dkt.#13).

**IT IS FURTHER ORDERED** that this matter be remanded to the Commissioner for an award of benefits to Plaintiff.

DATED this 24th day of March, 2006.

_____
Mary H. Murguia
United States District Judge